# Exhibit A

skip to main content

[ Print ]

# CASE INFORMATION

## CV-19-924473 HELLO LLC vs. LYFT, INC.

## Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 11/07/2019 | N/A | SR | FEDEX RECEIPT NO. 40239917 DELIVERED BY FEDEX 11/06/2019 LYFT, INC. PROCESSED BY COC 11/07/2019. | |
| 11/04/2019 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 11/04/2019 | D1 | CS | WRIT FEE | |
| 11/04/2019 | D1 | SR | SUMS COMPLAINT(40239917) SENT BY FEDERAL EXPRESS. TO: LYFT, INC. 4400 EASTON COMMONS WAY SUITE 125 COLUMBUS, OH 43219 | 📄 |
| 11/04/2019 | N/A | SF | JUDGE JOSEPH D RUSSO ASSIGNED (RANDOM) | |
| 11/04/2019 | P1 | SF | LEGAL RESEARCH | |
| 11/04/2019 | P1 | SF | LEGAL NEWS | |
| 11/04/2019 | P1 | SF | LEGAL AID | |
| 11/04/2019 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 11/04/2019 | P1 | SF | COMPUTER FEE | |
| 11/04/2019 | P1 | SF | CLERK'S FEE | |
| 11/04/2019 | P1 | SF | DEPOSIT AMOUNT PAID TIMOTHY JOSEPH CUNNING | |
| 11/04/2019 | N/A | SF | CASE FILED: COMPLAINT | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
Website Questions or Comments.
Copyright © 2019 PROWARE. All Rights Reserved. 1.1.232

SUMMONS IN A CIVIL ACTION — COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO.  |       | SUMMONS NO. |
|-----------|-------|-------------|
| CV19924473 | D1 FX | 40239917    |

Rule 4 (B) Ohio

Rules of Civil Procedure

| HELLO LLC |
| VS |
| LYFT, INC. |

PLAINTIFF

DEFENDANT

## SUMMONS

LYFT, INC.
C/O CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY
SUITE 125

COLUMBUS OH 43219

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

TIMOTHY JOSEPH CUNNING
940 WINDHAM COURT, SUITE 4

BOARDMAN, OH 44512-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

JOSEPH D RUSSO
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas

By_____
       Deputy

| DATE SENT |
| Nov 4, 2019 |

COMPLAINT FILED   11/04/2019



CMSN130



November 7, 2019

Dear Customer:

The following is the proof-of-delivery for tracking number **780716625520**.

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Shipping/Receiving |
| Signed for by: | S.SULLENGER | Delivery location: | 4400 EASTON CMNS 125 COLUMBUS, OH 43219 |
| Service type: | FedEx Express Saver | Delivery date: | Nov 6, 2019 09:30 |
| Special Handling: | Deliver Weekday | | |
| | Direct Signature Required | | |



| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 780716625520 | Ship date: | Nov 4, 2019 |
| | | Weight: | 0.5 lbs/0.2 kg |

Recipient:
LYFT, INC.
C/O CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY
SUITE 125
COLUMBUS, OH 43219 US
Reference
Invoice number

Shipper:
CCoC
1200 Ontario
Cleveland, OH 44113 US

CV19924473
40239917

Thank you for choosing FedEx.

CV19924473 / 40239917 / LYFT, INC. / 2019-11-7 05:22



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**November 4, 2019 13:16**

By: TIMOTHY JOSEPH CUNNING 0088084

Confirmation Nbr. 1859837

HELLO LLC                                CV 19 924473

vs.
                                         **Judge:** JOSEPH D. RUSSO
LYFT, INC.

Pages Filed: 9

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **HELLO LLC** ) <br> 139 Bell Street ) <br> Chagrin Falls, Ohio 44022 ) <br> ) <br> Plaintiff, ) <br> ) <br> -v- ) <br> ) <br> **LYFT, INC.** ) <br> c/o CT Corporation System ) <br> 4400 Easton Commons Way, Suite 125 ) <br> Columbus, Ohio 43219 ) <br> ) <br> Defendant. | CASE NO._____ <br><br> JUDGE:_____ <br><br><br><br><br><br> **COMPLAINT** <br><br> (Jury demand endorsed hereon) |

For its Complaint, Plaintiff states as follows:

## PARTIES

1. Plaintiff Hello LLC ("Hello") is an Ohio limited liability company with its principal place of business in Chagrin Falls, Ohio. Hello is a public relations and social media marketing agency with a stellar and well-deserved reputation in the greater Cleveland area for high-quality work.

2. Defendant Lyft, Inc. ("Lyft") is a Delaware corporation with its principal place of business in California. Lyft is as a transportation network company (TNC) "that provides prearranged transportation services for compensation using an online-enabled application (app) or platform to connect passengers with drivers using their personal vehicles." California Public Utilities Commission, R.12-12-011. Lyft's main competitor is Uber Technologies, Inc.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to R.C. 2305.01.

4. The amount in controversy exceeds Fifteen Thousand Dollars ($15,000.00).

5. Venue is proper based on the facts set forth in this Complaint.

## FACTUAL ALLEGATIONS

6. Hello was founded in 2013 by Michelle Venorsky. Prior to founding Hello, Ms. Venorsky wrote the largest blog in Ohio dedicated to local farmers and chefs, and she reviewed restaurants for the Cleveland Plain Dealer and Cleveland Magazine. Through these experiences, Ms. Venorsky gained insight into the Cleveland restaurant scene, and she developed close personal and professional relationships with local chefs. As a result of those relationships, Hello counts many Cleveland area restaurants as clients.

7. Since its founding in 2013, Hello has garnered a well-deserved reputation in the community for stellar work-product and positive results for its clients. Due to Hello's great reputation, on May 22, 2018, the market manager of Lyft Cleveland, Jay Dumaswala, called Hello and said that Lyft was looking to increase its market share in Cleveland and grow its business, and Mr. Dumaswala wanted to know whether Hello would be interested in bidding on the marketing work. Hello was very interested in working with Lyft, and over the next few days, Hello and Mr. Dumaswala had multiple phone calls and exchanged multiple emails to discuss Lyft's marketing strategy, its corporate culture, and its goals for Cleveland and beyond. At the risk of oversimplification, Lyft was attempting to gain market share in Cleveland by positioning itself as more socially conscious than Uber, and Lyft's brand guidelines focused heavily on goodwill and "leading with principles."

8. Prior to exchanging any confidential information, Lyft and Hello executed a nondisclosure agreement (NDA) that Lyft drafted. The NDA specifically provided that

any business plans and marketing strategies Hello devised and pitched to Lyft would remain the property of Hello, and Lyft would not be able to use that information for any purpose.

9. Hello was excited about the potential to work with Lyft, and it began creating a marketing strategy that would further Lyft's image and promote Lyft's goals. Over the next few weeks, Hello's employees worked long days devising a number of different strategies. One of the strategies that Hello created was called "YOUR JOB AWAITS."

YOUR JOB AWAITS.

MEET EDWINS.

From CNN to Today to The New York Times, Edwins is recognized nationally, but is firmly planted right here in CLE. Started by Brandon Chrostowski, Edwins is not your typical restaurant. They are a high-end French restaurant that trains men and women reentering society in the hospitality industry. Coincidentally, there are plenty of restaurants (especially on the east side) that need help from the front of the house to the back – yet are having a hard time staffing due to the lack of public transportation on the east side. Enter Lyft. This is a perfect opportunity to connect these talented men and women with jobs and provide the support they need to help kickstart their second chance and make a positive impact on society.



10. This strategy was the product of Ms. Venorsky's experience in and knowledge of the Cleveland restaurant industry, and more specifically her familiarity with what the EDWINS Leadership & Restaurant Institute (EDWINS) was doing with formerly

incarcerated individuals and the challenges that local restaurants were having staffing open positions.

11. EDWINS, which is well-known and has garnered positive national attention, is a 501(c)(3) organization that "give[s] formerly incarcerated adults a foundation in the culinary and hospitality industry while providing a support network [for] their long-term success. [EDWINS's] mission three-fold: is to teach a skilled and in-demand trade in the culinary arts, empower willing minds through passion for hospitality management, and prepare students for a successful transition home." https://edwinsrestaurant.org/about-us/ (last visited Sept. 30, 2019).

12. EDWINS is successful in its mission, as its graduates have a recidivism rate of only 1.4%, and over 95% of its graduates gain employment after graduation. https://edwinsrestaurant.org/about-us/ (last visited Sept. 30, 2019).

13. Ms. Venorsky recognized that Lyft could assist in EDWINS's mission by taking the next step and providing the necessary transportation for its participants and graduates to train for, gain, and ultimately maintain employment. This unique strategy would allow Lyft to garner favorable publicity and position itself as a more socially conscious alternative to Uber, thereby gaining market share. Additionally, this strategy could be implemented across the country, and the financial benefits to Lyft would be immense. Recognizing its worth, Hello went beyond the protections in the NDA and specifically noted that the marketing strategy was "confidential material proprietary to Hello LLC."

THANK YOU.
Michelle Venorsky, apr.

mvenorsky@hellocle.com
c. 216.346.3988
o. 440.394.8007
@MichelleV

*Because we're told we have to include this by people way smarter than us:*

*This document contains confidential material proprietary to Hello LLC. Disclosure of this document, to parties who are not team members or members of the organization or company for which this document is intended, is strictly prohibited. All other rights to the contents of this document, including but not limited to methodologies, concepts, experiences, and client lists, are assigned to Hello LLC.*

14. On May 31, 2018, Hello pitched this strategy to Lyft. The presentation went much longer than its scheduled hour, and it was clear that Mr. Dumaswala loved it because he repeatedly remarked that it was amazing and just what Lyft wanted. At the end of the presentation, Mr. Dumaswala requested a copy of Hello's pitch deck, which Hello emailed to him.

15. Over the next few weeks, Mr. Dumaswala and Ms. Venorsky exchanged emails regarding the presentation. On June 19, 2018, Mr. Dumaswala informed Ms. Venorsky that Lyft decided to partner with Hello's competitor, Falls Communications, but that "[i]t was really like splitting hairs to choose between Hello and Falls." Although Hello was disappointed that Lyft did not choose it, Hello remained professional and left open the possibility of working with Lyft in the future.

16. On June 13, 2019, Kim Kardashian appeared at the White House to announce that she had partnered with Lyft to provide formerly incarcerated individuals with Lyft gift

cards to assist them with transportation to job interviews and places of employment. As with most things involving Ms. Kardashian, this partnership garnered international news, and Ms. Kardashian tweeted news of this partnership to her 61.8 million Twitter followers:



**Kim Kardashian West** ✓
@KimKardashian

Proud to partner on this initiative with @Lyft, a company with a history of taking bold action to do what's right for our community. Thank you for providing ride share credits to formally incarcerated people when they come home.

♡ 11.7K   9:32 PM - Jun 13, 2019

💬 1,378 people are talking about this

Screenshot captured by screenshot.guru on Mon, 30 Sep 2019 14:39:50 GMT.
Permalink: twitter.com/KimKardashian/status/1139284556614438913

17. On June 14, 2019, Ms. Venorsky was watching The Today Show when she learned of Ms. Kardashian's partnership with Lyft. Lyft's "partnership" with Ms. Kardashian was nothing more than the implementation of the marketing strategy that Hello devised and retained all rights in. In fact, Brandon Chrowstoski, the founder, president, and CEO of EDWINS was present at the White House for this announcement.

18. The marketing strategy that Hello presented to Lyft is a "trade secret" as that term is defined in R.C. 1333.61(D). Lyft misappropriated that trade secret and used it to partner with one of the world's most famous people, Ms. Kardashian.

## COUNT ONE: MISAPPROPRIATION OF TRADE SECRET

19. Hello incorporates by reference all preceding paragraphs as if fully restated here and further states as follows.

20. The marketing strategy that Hello presented to Lyft is a protectable "trade secret" as that term is defined in R.C. 1333.61(D).

21. Hello derives independent economic value, both actual and potential, from the trade secret not being generally known to, nor readily ascertainable by, other individuals or companies who could derive significant economic value from its disclosure.

22. Hello takes great efforts to maintain its trade secrets. For example, Hello maintains confidentiality through restricted access, limited disclosure, agreed confidentiality, password protections, and other safeguards with its employees, independent contractors, clients, and prospective clients.

23. Hello spent considerable time, effort, and financial resources in developing the marketing strategy, and it was only shared with Lyft under the auspices of trust, promises of non-disclosure, the reservation of rights, and in the context of the parties' confidential relationship.

24. Lyft knew of the existence, value, and secretive nature of the trade secret. Lyft was well-aware of the confidential and proprietary nature of the trade secret and of its duty not to use or disclose it for its benefit or for the benefit of any other person or entity. Through improper means and with an improper purpose, and in conflict with Hello's business interests and without justification or permission, Lyft has used, released, or disclosed the trade secret.

7

25. Lyft's unlawful misappropriation of the trade secret has already had a significant negative financial impact on Hello's business.

26. Lyft has willfully, wrongfully, and maliciously misappropriated the trade secret. Lyft's misappropriation continues to occur and will continue to occur.

## COUNT TWO: BREACH OF CONTRACT

27. The NDA is "governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law.

28. To prevail on a claim for breach of contract, California law requires that the plaintiff establish (1) a contract, (2) performance or excuse for nonperformance, (3) breach, and (4) damages. *Acoustics, Inc. v. Trepte Const. Co.*, 14 Cal.App.3d 887, 913 (1971).

29. The NDA is a contract, and Hello has performed all of its duties under the NDA. Lyft has breached the NDA by, without limitation, (1) disclosing the trade secret, (2) using the trade secret for its own purpose, and (3) using the trade secret for a purpose other than to carry out discussions concerning and the undertaking of the Relationship, the term "Relationship" being defined in the NDA as "a possible business opportunity of mutual interest."

30. Hello has suffered and continues to suffer damages due to Lyft's breach.

WHEREFORE, based upon the foregoing, Plaintiff demands judgment against Defendant as follows:

    a. Compensatory damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00), plus prejudgment interest and costs as the law may allow;

    b. Punitive damages in an amount to be determined at trial;

    c. Disgorgement of profits;

Electronically Filed 11/04/2019 13:16 / / CV 19 924473 / Confirmation Nbr. 1859837 / CLAJB

d. Injunctive relief;

e. Attorney's fees and costs;

f. An order granting such other and further relief in law or equity as this Court may deem reasonable and just.

/s/ Timothy J. Cunning
Timothy J. Cunning, Esq. #0088084
Attorney for Plaintiff
SCULLIN & CUNNING, LLC
940 Windham Court, Suite 4
Boardman, Ohio 44512
Phone: 330.953.2045
Facsimile: 330.953.2058
tcunning@scullin-cunning.com

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues in this action.

/s/ Timothy J. Cunning
Timothy J. Cunning, Esq. #0088084

### INSTRUCTIONS FOR SERVICE

TO THE CLERK:

Pursuant to Civ.R. 4.1(A)(1)(a), Plaintiff requests that the Clerk of Courts serve a copy of the foregoing Complaint by certified mail, return receipt requested, upon the Defendants at the addresses listed in the case caption.

/s/ Timothy J. Cunning
Timothy J. Cunning, Esq. #0088084